```
            UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF OHIO
                  WESTERN DIVISION
```

Gary L. Neiheisel,              :   Case No. 1:06-cv-030
                                :
    Plaintiff,                  :
                                :
vs.                             :
                                :
AK Steel Corporation and AK     :
Steel Long Term Disability Plan,:
                                :
    Defendants.                 :

**ORDER**

On May 23, 2007, this Court granted Plaintiff's motion for summary judgment and awarded Plaintiff long-term disability benefits. After a status conference, it became apparent that the parties disagreed about the proper calculation of those benefits under AK Steel's Long Term Disability Plan. The parties agreed to submit this question to the Court to avoid further delay, and with BPAC's agreement that the calculation presented in Defendants' briefs is attributed to BPAC, the Plan Administrator. The briefs on the benefit calculation issues have been submitted (Docs. 60, 61 and 63). Also ripe for decision is Plaintiff's motion for attorney's fees (Doc. 48), to which Defendants have responded (Doc. 54), and Plaintiff has replied (Doc. 56).

Regarding the benefit calculation, there are two issues in dispute and one on which the parties apparently agree, as discussed below.

(1) **The Maximum Benefit Limitation**. The LTD Plan's section entitled "Amount of Benefit" defines "Basic Long Term Disability Benefit" as follows:

> You will receive an amount equal to 60% of your monthly base salary in effect on the date your disability begins. All benefit amounts are subject to possible reductions described in the *Benefit Reductions* section of this book.

(AR 557)

The next section of the Plan is titled "Maximum Limits." Within this section is a paragraph labeled "Basic LTD Benefit Maximum" which states:

> The maximum monthly limit for the Basic LTD Benefit is $5,000 (offset by Social Security Disability benefits, any immediate pension payable from the Noncontributory Pension Plan and any other disability benefits.)

(AR 558)

AK Steel paid LTD benefits to Neiheisel from April 2002 through February 2003. The benefit was calculated by taking 60% of his monthly salary, or $5,472, and offsetting the Social Security Disability benefits Neiheisel received, $1,796, for a net payment of $3,676.

AK Steel now contends that this calculation was wrong, because the basic LTD benefit should have been capped at $5,000 **before** offsetting any SSDI benefits. It argues that Neiheisel was overpaid for each of the eleven payments he received, and that the calculation of accrued and future benefits must use

$5,000 as the base benefit. Neiheisel argues that it is too late for AK Steel to raise this issue, as payments were first made almost six years ago. He also notes the lack of any evidence that this Plan interpretation has been applied to anyone else.

The Court must conclude that the "Basic LTD Benefit Maximum" clause clearly defines the maximum base benefit to be $5,000. The types of benefits identified in the parenthetical clause are then offset from this base maximum amount. AK Steel's Benefits Manager, Judith Stewart, states in her declaration that she made a mistake when she initially calculated Plaintiff's benefit. (Doc. 61, Exhibit 4 at ¶4.) The Court notes in this regard that the prior ARMCO plan, which had only recently been superceded by the AK Steel plan, did not have a similar benefit cap. (See AR 543) Plaintiff does not explicitly argue that the Plan is estopped from correcting Ms. Stewart's error. But even if he did, equitable estoppel requires some evidence that the party to be estopped was aware of the true facts when it made its representation, and that Plaintiff was unaware of those facts. See, e.g., <u>Armistead v. Vernitron Corp.</u>, 944 F.2d 1287, 1298 (1991). The Court concludes that there is insufficient evidence suggesting that Stewart's error in her initial calculation of benefits was anything other than inadvertent. Therefore, the Court finds that the Base Benefit under the plan should be $5,000.

The parties do not dispute that the correct amount of the SSDI offset from the base benefit is $1,722, and not the $1,796 amount previously used. The Plan expressly limits the SSDI offset to the initially determined amount per the Plan's "Social Security Freeze" section. (AR 562)

2. **Reduction for Pension Plan Rollover**.

The LTD Plan's section titled "Benefit Reductions" states in pertinent part:

> Your Long Term Disability benefit payments will be reduced by any AK Steel-provided pension **you are receiving** and any other disability payments **you are eligible** to receive from the following:
>
> ● Any insurance to which AK Steel makes contributions
> ● Any Social Security for primary disability benefits or unreduced primary old-age benefits (if you are receiving the Basic Long Term Disability Benefit)
> ● Any government agency, program or coverage required or provided by law
> ● Any other plan providing disability benefits to which AK Steel makes contributions, including Worker's Compensation

(AR 559; emphasis added) The Plan does not specifically define the term "receiving."

Plaintiff's affidavit states that in the spring of 2006, while this suit was pending, he became concerned that AK Steel might try to deny him pension benefits at some point, given the difficulties he encountered with his LTD benefits. Neiheisel eventually directed the AK Steel pension plan to rollover his

-4-

accumulated benefits to an IRA trustee of his choosing (T. Rowe Price). This transfer was made directly from AK's pension plan to the T. Rowe Price custodian, a nontaxable event for Neiheisel. He argues he did not "receive" the pension distribution, and therefore it should not be offset from his disability payment.

AK Steel argues that the rollover distribution of pension benefits must be offset from the LTD benefit under the Plan term quoted above, because Neiheisel "received" benefits from the AK Steel-provided pension plan when he opted to rollover those benefits to his private IRA. Roger Newport, a member of BPAC and AK Steel's Controller and Chief Accounting Officer, submitted a declaration stating that "When an employee requests the balance of his pension benefit and the plan makes payment of that balance, the employee has received his pension benefits, regardless of how he uses the money after it leaves the pension plan's control." (Doc. 61, Exhibit 4 at ¶6) AK Steel also notes that as soon as the pension funds were transferred to his rollover IRA, Neiheisel was legally able to withdraw those funds. If he chose to do so, the Plan would have no way to calculate the applicable offset, thus resulting in a windfall to Neiheisel.

There is no dispute that the AK Steel Plan vests discretion in the Plan Administrator to interpret Plan terms, and to determine benefits under those terms. (AR 565) The Court must therefore apply the arbitrary and capricious standard of review,

the least demanding standard of review of an administrator's action. Davis v. Kentucky Finance Co. Retirement Plan, 887 F.2d 689, 693 (6th Cir. 1989). The administrator's interpretation of the plan must be reasonable, however, and must adhere to the plain meaning of plan language as it would be construed by an ordinary person. Shelby County Health Care Corp. v. Southern Council of Ind. Workers Health & Welfare Fund, 203 F.3d 926, 933-34 (6th Cir. 2000). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." Killian v. Healthsource Provident Administrators, 152 F.3d 514, 521 (6th Cir. 1998) (internal citations and quotations omitted). As noted in the Court's Order granting partial summary judgment, in this case the plan administrator is also the employer who funds the plan, creating a structural conflict of interest. Even in such cases, however, the Court does not review the administrator's plan interpretation de novo. Rather, the conflict of interest is one factor that must be weighed in determining whether the plan abused its discretion. See Killian (where an actual conflict of interest exists, if that conflict improperly influenced the administrator's decision, the decision is arbitrary and capricious).

Neiheisel cites Blankenship v. Liberty Life Assurance Co., 486 F.3d 620 (9th Cir. 2007), which addressed a similar

situation.  There, Mr. Blankenship was terminated from his employment at age 64, after his long-term disability benefits were terminated and he did not return to work.  Blankenship elected to have his accumulated pension and retirement plan balances rolled over to an IRA administered by Vanguard.  The balances were transferred directly to the IRA account, with Vanguard as the IRA trustee.  Like Plaintiff in this case, Blankenship did not "receive" the rollover amount for tax purposes under the Internal Revenue Code.  The Plan argued that his LTD benefits (which the district court found had been improperly terminated, a ruling the Plan did not appeal) must be offset by the value of the rollover Blankenship "received" from the pension plans.

The district court, on de novo review of the Plan administrator's decision, applied the *contra proferentem* doctrine after finding the Plan was ambiguous regarding the meaning of "receive."  The parties agreed that the common meaning of "receive" is "to take into possession or control."  But those alternatives produced different results, because it was Blankenship's IRA trustee that took possession of those funds.

The Ninth Circuit affirmed the result, construing the term "receive" to mean "possession through actual receipt of funds." Id. at 625.  Since Blankenship did not "actually receive" the funds in question, no offset was required.  The court relied on

the tax statutes defining an IRA custodian as a trustee, and providing that a qualified plan distribution is received by (and thus taxable to) a participant only if "actually distributed" to that participant.  It rejected the Plan's suggestion that Vanguard was merely an agent for Blankenship.  The Ninth Circuit also noted that this interpretation was supported by the Plan's treatment of other benefits requiring offset, which distinguished benefits a participant "receives" from those for which he is "eligible."  (The latter included workers compensation, occupational disease, and any other disability income, as does the AK Steel Plan.)  Finally, the court noted that if Blankenship had deferred distribution of his retirement funds and left them in his employer's plan, those funds would not offset his disability benefits.  The court found no significant difference between an election for deferred distribution, and a deferral by direct rollover to an IRA trustee.  "In both instances, Blankenship could choose to take out some or all of the money without penalty; in both instances, the money belonged to Blankenship and would be held for him by a trustee."  Id. at 627.

AK Steel correctly notes that Blankenship involved de novo review, not the more deferential arbitrary and capricious standard.  The doctrine of *contra proferentem* does not apply when the court is reviewing a plan's interpretation under arbitrary and capricious standards.

-8-

The Court has carefully reviewed the parties' arguments. The Court recognizes that "receive" is not expressly defined by the Plan, and that the Administrator's interpretation is entitled to deference if it is reasonable. The Court concludes that "receive" must be interpreted according to its plain and common meaning, "to take or come into possession of." See Webster's Ninth New Collegiate Dictionary (1987). From the standpoint of the ordinary person, a plan participant does not "receive" funds that are directly rolled over to a qualified IRA account. AK Steel argues that this is a distinction without a difference, because the essential fact is that AK Steel's pension benefits are no longer held by AK Steel, but by another plan trustee. But that is not a distinction that the Plan terms make. The critical language, from the Court's perspective, is the first sentence of the "Benefits Reduction" section, requiring an offset for AK Steel pension funds "you are receiving." Neiheisel is not "receiving" any such funds.

AK Steel does not directly address another section of the LTD Plan entitled "Single Lump Sum Payments under Other Benefit Plans." This section states:

> If you receive a lump sum payment, in lieu of, or as a substitute for, any periodic or monthly benefit for any benefit plan listed in the Benefit Reductions section of this booklet, the lump sum benefit will be calculated as if the payment was made as either a periodic or monthly payment. This amount will be proportionally deducted from

your monthly Long Term Disability benefits. (AR 562)  This section also supports the Court's conclusion, as it cross-references the "Benefits Reduction" section identifying pension funds "you are receiving."  Thus if a participant elected to convert his monthly benefit income stream into a one-time lump sum payment, he would "receive" that payment.  The word "receiving" used in the basic benefit section implies an ongoing course of payments.

Defendants' affidavits state that the appropriate offset for the pension rollover is $1,734.97, but do not offer any details as to how this amount was calculated.  Nor do Defendants offer any evidence concerning other instances where these sections of the Plan have been interpreted in the fashion Defendants assert here.  See, e.g., Adcock v. Firestone Tire & Rubber Co., 822 F.2d 623, 626-627 (6th Cir. 1987), noting that a plan administrator's interpretation of the plan is reasonable if it is consistent with past interpretations of the plan, with the plan's stated goals, and with a fair reading of the plan.

Even under the deferential review required in this case, the Court cannot conclude that the Plan's interpretation is reasonable under these factors, considering all of the Plan terms and the ordinary meaning of the word "receive."  Therefore the Court finds that the Plan may not offset Neiheisel's LTD benefits with regard to the rollover amount being held by Neiheisel's IRA

trustee.

However, Neiheisel's pleadings suggest but do not plainly state that he is not currently taking any distributions from that IRA account. AK Steel notes that if he chooses to do so, the Plan has no way to calculate his distributions as an offset to his LTD benefits. It would plainly contravene the terms of the Plan to permit an LTD beneficiary to rollover his pension funds to a third-party IRA trustee and immediately take distributions, in order to avoid the Plan's offset for pension benefits he is "receiving" from AK Steel. If Neiheisel had requested pension payments directly from AK Steel (assuming eligibility), there is no question but that his pension distributions would be offset. To avoid this potential windfall, the Court orders that Plaintiff must inform the Plan Administrator, in writing, of any distribution he takes from the rollover IRA until such time as Neiheisel's eligibility for LTD benefits ceases. This written notice must be sent to the Plan Administrator within thirty (30) days of Neiheisel's request for an IRA distribution.

3. **Statutory Penalties**.

Plaintiff urges the Court to reconsider its previous order denying Plaintiff statutory penalties. Plaintiff suggests that Defendants' most recent positions on Plan interpretation are more evidence of the arbitrary and capricious approach Defendants have taken to Plaintiff's claim from the start. Plaintiff also

recognizes, as he must, that statutory penalties are entirely within the discretion of the Court.

The Court notes that Defendants submitted a document with their most recent brief that, according to Plaintiff, has never before been produced. The document appears to be handwritten notes by Karen Dearth of telephone conversations with Plaintiff in April of 2006. (See Doc. 61, Exhibit A to Dearth Declaration.) It is unclear why this document was not previously produced.

The Court's order granting Plaintiff summary judgment denied Plaintiff's request for statutory penalties, in part because the Court could not conclude that the Plan Administrator acted with malice or bad faith. The record was not clear if the Plan Administrator actually made many of the decisions concerning BPAC's process for addressing Neiheisel's claim. In view of the Court's comments in that Order, Defendants' submission for the record of a previously unproduced document at this late stage is troubling.

The Court would be well within its discretion in granting penalties to Plaintiff. However, in view of the Court's decision on Plaintiff's entitlement to benefits and the calculation of those benefits, together with pre-judgment and post-judgment interest and attorney's fees, the Court will not award statutory penalties against the Plan.

4.   **Attorney's Fees**.

Plaintiff has moved for an award of attorney's fees, in the amount of $131,890, together with expenses of $3,696.41.  (See Docs. 48 and 57)  Defendants oppose the motion in part, seeking a reduction in Plaintiff's counsel's hourly rate, and a reduction to reflect Plaintiff's unsuccessful claim for statutory penalties.  (Doc. 54)

The Court has discretion to award fees to a prevailing ERISA plaintiff.  The court considers the following factors: (1) the culpability or bad faith of the opposing party; (2) the opposing party's financial ability to satisfy an award; (3) the deterrent effect on others in similar circumstances; (4) whether the party seeking fees conferred a benefit on all ERISA Plan participants or resolved a common legal question; and (5) the relative merits of the party's positions.  See <u>Armistead v. Vernitron Corp.</u>, 944 F.2d 1287, 1301 (6th Cir. 1991).  Defendants do not contest the propriety of a fee award, but dispute the reasonableness of counsel's fee bill.

**Hourly Rate**: Plaintiff's counsel, William Blessing, is a highly experienced ERISA lawyer.  His hourly rate of $350 has recently been approved in <u>Kohler v. PepsiAmericas</u>, Case No. 1:04-cv-742 (Barrett, J.).  Counsel also submits evidence of hourly fee rates approved in other types of cases for lawyers with similar years of experience and specialty expertise in this

community.  (See Doc. 56 at p. 3)  AK Steel notes that the "average" rate from a 2004 Ohio survey of attorney billing rates is only $213.  But this survey includes lawyers with no experience and lawyers with many years of experience, as well as lawyers in small to very large firms.  The benchmark should be lawyers of comparable skills and experience, not merely the larger community average.  The Court finds that the hourly rates charged by Plaintiff's counsel and his associates and paralegal are not excessive, and should not be reduced.

**Reduction in Hours**.  Defendants next argue that no fees should be awarded for time spent pursuing Plaintiff's statutory penalty claim.  The Court may decline to award fees due to a plaintiff's lack of success on some claims.  Here, the factual issues of Plaintiff's entitlement to LTD benefits are intertwined with the factual basis for Plaintiff's request for statutory penalties.  Counsel's billing statements identify a small number of hours devoted to legal research on this issue.  The legal basis for a penalty award is discrete from the legal issues involving benefits.  The Court will exercise its discretion to deduct this time from the total award.  Mr. Blessing's time is reduced by 1.55 hours, or $542.50.  Ms. Wallace's time is reduced by 9.35 hours, or $1402.50.

**Lodestar Reduction**.  Finally, Defendants urge the Court to reduce Plaintiff's lodestar calculation by 20% due to the lack of

success on the penalties claim.  The Court will not double-penalize Plaintiff in this fashion.  As held in Henley v. Eckerhart, 461 U.S. 424, 435 (1983), the court should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Here, the Court finds that the overall relief Plaintiff has obtained is significant, and was obtained only after significant, sustained efforts on the part of Plaintiff's counsel.  The fact that the Court exercised its discretion not to award penalties against the Plan does not alter the fact that Plaintiff has succeeded in vindicating his right to continued receipt of LTD benefits, which were initially terminated by Defendants almost five years ago.

## CONCLUSION

The Court determines that Plaintiff's long-term disability benefit base amount is $5,000 per month, from which is offset the SSDI amount of $1,722.  No offset will be made for the rollover from the pension plan to the IRA trustee, unless Plaintiff elects to receive a distribution from that plan prior to the time his LTD benefits cease.

Plaintiff is awarded pre-judgment interest on the accrued benefits calculated under this formula at the rate of 4.96% per annum, a rate both parties agree is proper.  Post-judgment interest is also awarded from the date of entry of judgment at

the same rate, 4.96%. Plaintiff is awarded attorney's fees in the amount of $129,945, and costs in the amount of $3,696.41.

**SO ORDERED.**

**THIS CASE IS CLOSED.**

DATED: January 17, 2008              s/Sandra S. Beckwith
                                     Sandra S. Beckwith, Chief Judge
                                      United States District Court